IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

CONNIE MARSHALL,                  )
                                  )
            Plaintiff,            )
                                  )
v.                                ) Case No. CIV-14-010-RAW-KEW
                                  )
CAROLYN W. COLVIN, Acting         )
Commissioner of Social            )
Security Administration,          )
                                  )
            Defendant.            )

**REPORT AND RECOMMENDATION**

Plaintiff Connie Marshall (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on March 25, 1964 and was 48 years old at the time of the ALJ's decision. Claimant completed her education through the tenth grade. Claimant has worked in the past as a home health aide, waitress, and meat plant laborer. Claimant alleges an

inability to work beginning July 1, 2008 due to limitations resulting from neck, right shoulder, right hand, and lower back pain, and legal blindness in the right eye.

## Procedural History

On January 27, 2011, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. An administrative hearing was conducted by Administrative Law Judge Kim Parrish ("ALJ") on October 2, 2012 in Oklahoma City, Oklahoma. The ALJ issued an unfavorable decision on October 26, 2012. On November 19, 2013, the Appeals Council denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she retained the RFC to perform light work with restrictions.

## Error Alleged for Review

Claimant asserts the ALJ committed error in (1) engaging in a flawed credibility analysis; (2) improperly afforded the consultative examiners and state agency physicians greater weight than the treating physicians; (3) not including a severe mental impairment and its effects upon Claimant's functioning in his RFC; and (4) failing to include limitations for Claimant's blindness in the RFC determination.

**Credibility Analysis**

In his decision, the ALJ determined Claimant suffered from the severe impairments of chronic cervical pain with radiation into her arm. (Tr. 19). He concluded that Claimant retained the RFC to perform light work except that any job she could perform would be required to be limited to unskilled SVP 2. (Tr. 21). After consultation with a vocational expert, the ALJ determined Claimant could perform the representative jobs of mail clerk, officer clerk, and records clerk, all of which the vocational expert testified existed in sufficient numbers in the regional and national economies. (Tr. 29). Based upon these findings, the ALJ concluded Claimant was not disabled from July 1, 2008 through the date of the decision. (Tr. 29-30).

Claimant contends the ALJ improperly rejected his testimony on limitations finding it not credible. Claimant is critical of the

boilerplate language utilized by ALJs in numerous cases which stated that Claimant's testimony is not credible "to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 22). This Court also does not find favor with this phrase, especially in cases where no further explanation of the rejection of credibility is discussed in the decision. The testimony should be evaluated prior to the ALJ reaching a RFC determination. In this case, however, the ALJ uses the trite phrasing as a precursor for his actual analysis. He proceeds to set forth considerable detail concerning Claimant's treatment records.

In May of 2008, Claimant sought treatment from Dr. Emily Friedman for neck and head pain. She experienced mild muscle spasms and discomfort with palpation across the shoulders and up into the cervical spine. She had no atrophy or restriction of motion in the right shoulder or tenderness over the right rotator cuff. She had full motor usage at all levels in her upper extremities without atrophy. A cervical MRI showed a central disc herniation with a slight protrusion to the left causing mild foraminal stenosis at C6-C7. Changes were consistent with normal aging and degenerative disc disease. The condition was consider common and a "classic" case of a spinal disorder associated with

age.  Dr. Friedman gave her work restrictions.  (Tr. 329-30).

In August of 2009, Dr. Robert Remondino found that Claimant's large C6-C7 disc protrusion had resolved and a left paracentral C5-C6 disc protrusion and a broad based right paracentral disc bulge at C6-C7 as well as an annular disc bulge at C4-C5 remained.  (Tr. 358).  Dr. Remondino did not believe that surgery was the best treatment since Claimant did not have left-sided symptoms and that surgery might complicate matters.  Dr. Remondino concluded Claimant "overall . . . does well, all things considered."  (Tr. 359).  Claimant was released with a 10 pound weight limit.  Id.

In April of 2011, Claimant was evaluated by Dr. Adel Malati.  Dr. Malati found Claimant was not in acute distress and was not pale or jaundiced.  Dr. Malati did not note any peripheral edema, cyanosis, or clubbing and no neurosensory deficit in her extremities.  (Tr. 245).  Dr. Malati found Claimant walked in and out of the office without an assistive device, had a nice, normal, steady gait, was able to sit, stand, and lie down without difficulty, had full range of motion in the neck, shoulders, elbows, wrists, and hands, had good hand grip of 5/5 and equal bilaterally, had full range of motion in the back, hips, knees, and ankles, was able to do heel walking, toe walking, and heel-to-toe walking without difficulty.  (Tr. 246).

The ALJ also set forth Claimant's daily activities including her ability to take care of her personal needs, care for six dogs, perform light housework, reads, and watches television. Claimant prepares meals, does household chores, drives, goes outside, shops and manages her own financial affairs. She goes to church on Sunday, goes to dinner at her mother's house, and visits with friends. Based upon these findings, the ALJ found Claimant's impairments did not preclude her from engaging in substantial gainful activity. (Tr. 27).

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the

individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

The ALJ has sufficiently linked the objective medical evidence to his findings on Claimant's credibility. This Court attributes no error to the ALJ's assessment of Claimant's credibility.

**Evaluation of Opinion Evidence**

Claimant next asserts the ALJ inappropriately gave great weight to the opinions of consultative examining physicians and state agency physicians over Claimant's treating physician. Claimant first contends the ALJ did not properly evaluate the weight given to the opinions of Dr. Glenn Crowson, Dr. Remondino, and Dr. Hugh McClure, all treating physicians. In worker's compensation paperwork, Dr. Remondino found Claimant should be restricted to 10 pounds lifting but she was released for work with restrictions and the restrictions were labeled as "temporary." (Tr. 299-303).

Dr. McClure, a chiropractor, rated Claimant for worker's

9

compensation purposes as temporarily totally disabled.  He opined that Claimant would require continued medication and treatment. (Tr. 353).

The ALJ gave "little weight" to Dr. Crowson's opinion because he based his restrictions upon Claimant being depressed without referring her to a psychiatrist or psychologist for mental health treatment and never gave her any specific restrictions or limitations.  (Tr. 27).  He found Dr. Remondino's and Dr. McClure's opinion to be "of limited probative value" because "these seemed to be formed on more of the claimant's allegations and symptoms not clinical findings."  (Tr. 26-27).

In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight."  Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003).  An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record."  Id. (quotation omitted).  "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight."  Id.

Even if a treating physician's opinion is not entitled to

controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301

11

(quotations omitted).

The ALJ essentially rejected Drs. Remondino's and McClure's opinions without providing a supportable and adequate reason for doing so. His bases amounted to a "feeling" that these professionals' rested their opinions on Claimant's subjective statements to them without citing any evidentiary basis for doing so. Dr. Crowson did not base his entire opinion on the fact Claimant suffered from depression but cited this condition as an additional bases for his opinion. On remand, the ALJ shall reassess these treating physicians' opinions, proceed through the <u>Watkins</u> factors, and provide specific and legitimate reasons for accepting or rejecting their opinions. After doing so, the ALJ shall reassess his RFC findings in light of the re-evaluation of the opinion evidence.

**Evaluation of Mental Impairments**

The ALJ relied upon the evaluation of Dr. Kathleen Ward from August of 2011, the Psychiatric Review Technique completed by Dr. Joy Kelley from May of 2011, and the Psychiatric Review Technique completed by Dr. Phillip Massad in September of 2011 for concluding Claimant did not suffer from a mental impairment which restricted her ability to engage in basic work activities. (Tr. 252-65, 279-80, 283-95). Although some of the treating physicians offered

12

opinions on Claimant's depressive condition, none were mental health professionals unlike these consultative examiners and state agency physicians.  This basis is both legitimate and reasonable in light of the treatment record.  Hamilton v. Sec. of Health & Human Servs., 961 F.2d 1495, 1498-1500 (10th Cir. 1992).  Moreover, Claimant did not seek or obtain specific psychiatric or psychological professional assistance or treatment for a mental health condition.  The ALJ did not err in failing to find a severe mental impairment.

### Claimant's Blindness

Claimant has been found to be legally blind in her right eye by Dr. Kenneth Wainner in his RFC Assessment dated May 23, 2011. (Tr. 267).  However, he also found Claimant did not establish a visual limitation.  (Tr. 269).  On remand, the ALJ shall resolve this apparent contradiction, assess Claimant's blindness, and determine whether any functional limitation should be included in the RFC assessment for this condition.

### Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied.  Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social

13

Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order.

The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 9th day of March, 2015.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE